296 So.2d 545 (1974)
MILROS-SANS SOUCI, INC., a Florida Corporation, et al., Appellants,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, et al., Appellees.
No. 73-1422.
District Court of Appeal of Florida. Third District.
May 7, 1974.
Rehearing Denied July 12, 1974.
*546 Rosenberg, Rosenberg, Reisman & Glass, Miami, for appellants.
Stuart L. Simon, County Atty., and Robert A. Ginsberg, Asst. Co. Atty., for appellees.
Before PEARSON, HENDRY and HAVERFIELD, JJ.
HENDRY, Judge.
Appellants, plaintiffs in the trial court, seek review of a final judgment upholding the validity of the defendant-appellees' 1971 real property tax assessment on the Sans Souci Hotel, located at 3101 Collins Avenue, Miami Beach.
The issue framed by the pleadings and developed by the evidence before the trial court was clearly this: Whether or not the general office practice and customary procedures of the Dade County Tax Assessor's Office in mailing notices of tax assessment increases gave rise to a presumption that the Sans Souci had been notified by mail of an increase in its assessment?
Appellants denied that they received notice, and therefore they contended that the 1971 tax assessment was void, and they are *547 now entitled to seek administrative review of the assessment.[1]
On the other hand, the county's position was that the appellants were notified of the increase, that they failed thereafter to exhaust their administrative remedies before the 1971 Tax Adjustment Board, and that therefore the trial court was precluded from taking jurisdiction of the dispute.[2]
The trial court, following a hearing at which time each side presented two witnesses, entered judgment in favor of the county, ordering that the appellants pay the balance of the 1971 tax due, together with interest and any penalties legally provided.
At the hearing, Herbert Robins, president of the appellant Milros-Sans Souci, Inc. which owns and operates the Sans Souci Hotel, testified. So did the hotel's manager, Jules Slansky.
According to their testimony, the hotel normally received a notice of its assessment some time in May or June. In 1971, the hotel did receive a notice that its parking lot assessment would increase nominally in 1971; however, they testified that nothing pertaining to the hotel real property assessment was received.
Both men stated that they learned for the first time that the Sans Souci's 1971 assessment had been increased in October, 1971 when the hotel received its tax bill. This bill reflected an assessment of $2,403,775; in 1970, the hotel had been assessed for $1,882,420.[3]
At that point, a thorough search was made of the hotel's files to determine if a notice of increased assessment had been received. Hotel employees also were questioned as to whether or not they could recall ever receiving the notice. Robins and Slansky each concluded that the notice had not been received.
Robins was asked specifically why he did not make some inquiry as to whether or not the assessment of the hotel property was being increased after receiving notice of the increase on the parking lot. The following colloquy occurred:
"A. No, because I read in the newspaper that the only ones who would receive such notice were those whose property the tax assessor intended to charge for the current year.
"Q. You made no inquiry?
"A. No. I was quite happy I didn't receive it."
Thereafter, the county called Fred Knowles, administrative supervisor of the tax assessor's office, to rebut the Sans Souci's contention that no notice had been received.
Knowles described the general office practices and custom of the assessor's office with regard to preparing notices of increase in tax assessments. He stated that the firt step would be to post the increase on a folio card, which increase is in turn fed into a computer which would print out *548 what is known as an "advice of assessment card." This card is preprinted, with first class postage by special permit already applied.
The computer prints the taxpayer's name and address, and in 1971 it included his 1970 tax and his 1971 increase. After all the cards are printed they are carried in special trays to the tax assessor's office, and mailed by June 1 to the taxpayers. Knowles testified that approximately 200,000 such notices were mailed in 1971. He stated that no card was ever returned through the mails which had been addressed to the Sans Souci. Knowles let it be known that "... there is no question in my mind that the card was prepared by the computer, mailed properly, and not received by us. There is no question in my mind."
Basically, the appellants argue that the county's proof of the general office practice and course of conduct employed by the tax assessor's office was insufficient to make out a prima facie case that the notice to the Sans Souci was mailed in due course and received by the addressee. We cannot agree.
Our Supreme Court recently has expressed the view that where mail has been properly addressed, stamped, and mailed pursuant to normal office procedure, there is a presumption that the mail was received by the addressee. Brown v. Giffen Industries, Inc., Fla. 1973, 281 So.2d 897.
Appellants cite General Motors Accep. Corp. v. American Lib. Ins. Co., Fla.App. 1970, 238 So.2d 450; Equitable Life Assurance Society of U.S. v. Wagoner, Fla. App. 1972, 269 So.2d 747, and other cases, for the proposition that evidence of custom and habit is inadmissible to show conduct on a specific occasion.
In addition, appellants argue that Knowles' testimony concerning the assessor's customary practice fails to prove that the information on the folio card was actually fed into the computer, that a notice in fact emerged from the computer and that in fact the notice was mailed. Therefore, the "basic facts" underlying the presumption of mailing were not proved.
However, in our view to expect the county to prove such evidence would be unreasonable. See, Brown v. Giffen Industries, Inc., supra. As Knowles testified, the tax assessor's office mails anywhere from 200,000 to 400,000 notices of increased assessments annually.
It also is presumed that a tax assessor will perform all duties imposed upon him by law in good faith. See 13 Fla.Jur. Evidence § 82; 31 Fla.Jur. Taxation § 276.
We think that Knowles' testimony was adequate to create a rebuttable presumption that the notice of increased assessment had been duly mailed and received by the Sans Souci.
The trial judge found that the appellants did not overcome the presumption that a notice of increased assessment had been received. We conclude that the record supports the court's finding.
Therefore, for the reasons stated and upon the authorities cited, the judgment appealed is affirmed.
Affirmed.
NOTES
[1] Florida East Coast Railway Company v. Reid, Fla.App. 1973, 281 So.2d 77; Fla. Stat. § 194.011(2), F.S.A.
[2] Monroe County v. Gustinger, Fla.App. 1973, 285 So.2d 431; Marx v. Welch, Fla.App. 1965, 178 So.2d 737, cert. den. Fla., 188 So.2d 313.
[3] The 1970 figure was determined following arbitration between the Sans Souci and the county. At the hearing before the trial judge, the county introduced into evidence a document which reflected that the initial 1970 assessment on the hotel, prior to the arbitration, was the same as the figure on the 1971 tax bill, to wit: $2,403,775. This document, signed by Larry Zuckerman of the tax assessor's economic analysis division, who also testified at the hearing, purportedly was mailed to the Sans Souci in addition to the notice of increased assessment. The document shows that the 1970 arbitration adjustment was only applicable for the one year, and if the San Souci was to receive the adjustment for 1971 certain economic information would have to be furnished to the county. Apparently, this data was not given to the tax assessor's office.